**IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | |
|---|---|
| MARIAH DIANE BOWLES<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>APRO INTERNATIONAL, INC., INSURANCE COMPANY OF THE STATE OF PENNSYLVANIA, AMERICAN INTERNATIONAL GROUP, INC., and currently unknown JANE DOES and JOHN DOES,<br><br>　　　　Defendants. | Case No.: 4:18-cv-01869 |

**<u>DEFENDANT INSURANCE COMPANY OF THE STATE OF PENNSYLVANIA'S
MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS</u>**

Defendant The Insurance Company of the State of Pennsylvania ("ICSOP") states the following in support of its Motion to Dismiss Plaintiff Mariah Diane Bowles' ("Plaintiff") Complaint:

**INTRODUCTION**

Although this lawsuit contains a myriad of common law claims, at its heart, this lawsuit is about an alleged HIPAA violation said to have occurred in connection with a worker's compensation claim against Plaintiff's former employer, APRO International, Inc. ("APRO"). ICSOP was APRO's workers' compensation carrier.[1] Plaintiff asserts that ICSOP violated HIPAA by allegedly disclosing Plaintiff's medical and mental health information to APRO. Entirely absent from this twenty-nine page Complaint are allegations describing when this alleged

---

[1] American International Group, Inc., the holding company to ICSOP, has been dismissed from this lawsuit. (Doc. 8).

1

disclosure occurred, which individual allegedly made the disclosure and to whom, and how the alleged disclosure was transmitted. Instead, Plaintiff's entire case is built on her apparent memory of a HIPAA Consent Form "submitted to her by a representative of AIG"—*which Plaintiff does not attach to the Complaint.* (Doc. 1 at ¶ 31).

Nonetheless, Plaintiff's claims against ICSOP for Negligence *Per Se* (Count I), Intrusion Upon Seclusion (Count II), Intentional Infliction of Emotional Distress (Count III), and Breach of Fiduciary Duty (Count V) are all fatally flawed. ICSOP is not a "covered entity" under HIPAA, which Plaintiff contends sets the standard of care in this lawsuit. Even if Plaintiff could overcome this fatal problem with her claims, any alleged disclosure would have occurred in the course of a workers' compensation claim. There is an exception under HIPAA for disclosures authorized by law as part of workers' compensation claims. None of Plaintiff's allegations overcome this exception.[2]

In the alternative, Plaintiff's claims are not even properly before this Court. Plaintiff's allegation that she is suffering a "reoccurrence" of her workers' compensation injury underscores that this is a reactivation claim. Any reactivation of the resolved workers' compensation claim is not within this Court's purview, but is, rather, exclusive to the Department of Labor.

Accordingly, the claims presented against ICSOP in this matter fail as a matter of law, and must be dismissed.

## STANDARD OF REVIEW

The purpose of a motion to dismiss under Fed. R. Civ. P. 12(b)(6) is to test the legal sufficiency of the complaint. In reviewing sufficiency, the court assumes the factual allegations

---

[2] Although not necessarily the subject of this Motion to Dismiss, ICSOP notes that Plaintiff *herself* voluntarily disclosed medical and mental health information to APRO and the Department of Labor as part of her workers' compensation claim.

in the complaint are true and construes them in the light most favorable to the plaintiff. *Data Mfg., Inc. v. UPS, Inc.*, 557 F.3d 849, 851 (8th Cir. 2009). However, the Rule 8 pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Thus, the complaint must do more than recite the bare elements of a cause of action. *Iqbal*, 556 U.S. at 686. The complaint must "allege enough facts to 'nudge' its claims 'across the line from conceivable to plausible.'" *Rinehart v. Envtl. Dynamics, Inc.*, No. 09-4221-CV-C-NKL, 2010 WL 55969, at *1 (W.D. Mo. Jan. 4, 2010) (*quoting Twombly*, 550 U.S. at 570).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 677 (*citing Twombly*, 550 U.S. at 556). The plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully." *Id*. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id*. (*quoting Twombly*, 550 U.S. at 557). This standard reflects "two working principles." *Id*. "First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id*. "Second, only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id*. at 678. This is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*.; *see also Rinehart*, 2010 WL 55969, at *1.

Under this standard, Plaintiff's claims cannot survive dismissal.

## **ARGUMENT**

I. **PLAINTIFF FAILS TO STATE CLAIMS BASED ON AN ALLEGED UNAUTHORIZED DISCLOSURE IN VIOLATION OF HIPAA BECAUSE ICSOP IS NOT A COVERED ENTITY SUBJECT TO HIPAA.**

Plaintiff fails to state a claim of Negligence *Per Se* against ICSOP predicated on HIPAA

3

as the standard of care, and therefore Count I must be dismissed. Plaintiff admits that HIPAA does not create a private cause of action. (Doc. 1 at ¶ 97). Plaintiff attempts to circumvent this by bringing a claim of Negligence *Per Se* using HIPAA as the applicable standard of care. *Id*. Although ICSOP does not admit that Plaintiff's Negligence *Per Se* claim is cognizable[3], it is ultimately irrelevant whether it is cognizable. ICSOP is not a "covered entity" pursuant to HIPAA, and therefore Plaintiff's asserted standard of care in her Negligence *Per Se* claim does not apply to ICSOP and must be dismissed.

To establish a claim of Negligence *Per Se*, Plaintiff must demonstrate the following four requirements:

> 1) a violation of a statute or ordinance; 2) the injured party must be within the class of persons intended to be protected by the statute or ordinance; 3) the injury complained of must be of the nature that the statute or ordinance was designed to prevent; and 4) the violation of the statute or ordinance must be the proximate cause of the injury.

*Lowdermilk*, 91 S.W.3d at 628. Plaintiff intended to use HIPAA as the applicable "statute or ordinance," but Plaintiff cannot establish the first or second requirement of the Negligence *Per Se* claim because there was no violation of HIPAA and Plaintiff was not intended to be protected by HIPAA under these circumstances.

Accepting Plaintiff's factual allegations as true for purposes of this Motion to Dismiss, Plaintiff alleges that "… ICOSP was APRO's worker's compensation benefit insurer …." (Doc.

---

[3] The Eastern District of Missouri has held that a plaintiff may use HIPAA as the standard of care to support a claim of Negligence *Per Se*. *I.S. v. Wash. Univ.*, No. 4:11-CV-235SNLJ, 2011 WL 2433585, *2 (E.D. Mo. June 14, 2011). However, neither *I.S.* nor its interior citations discussed whether HIPAA is part of "the class of safety statutes on which negligence per se is ordinarily based" in Missouri. *See id.* (citing *Merrell Dow Pharma. Inc. v. Thompson*, 478 U.S. 804, 831–32 (1986); *K.V. & S.V. v. Women's Healthcare Network, LLC*, No. 07-0228-CV-W-DW, 2007 WL 1655734, at *1 (W.D. Mo. June 6, 2007)); *Lowdermilk v. Vescovo Bldg. & Realty Co., Inc.*, 91 S.W.3d 617, 628 (Mo. App. E.D. 2003). Accordingly, ICSOP does not waive its right to challenge that Plaintiff cannot state a claim for negligence *per se* because HIPAA is not a safety statute.

4

1 at ¶ 28). Plaintiff further alleges, without support, that "… someone employed by AIG, ICOSP, and/or AIG and ICOSP provided Plaintiff's highly confidential medical and mental health records to one or more of the JANE or JOHN DOE Defendants employed by APRO." (*Id*. at ¶ 96). In addition, she alleges that "… Defendant ICOSP provided Plaintiff's medical and mental health records to APRO in violation [sic] HIPAA." (*Id.* at ¶ 109).

Even accepting Plaintiff's allegations as true that someone at ICOSP disclosed her "highly confidential medical and mental health records" to one or more of the unidentified persons, Plaintiff does not assert a HIPAA violation. HIPAA does not prohibit all disclosures, but provides that "[a] covered entity or business associate may not use or disclose protected health information, except as permitted or required by …" HIPAA. 45 C.F.R §164.502(a); *see also Mastanduno v. Nat'l Freight Indus.*, No. COA17-1058, 2018 WL 4996234, at *4 (N.C. Ct. App. Oct. 16, 2018). Clearly, the HIPAA prohibition on disclosures only applies to a "covered entity" or "business associate." *Id*. Plaintiff alleges, without support or explanation, that "Defendant ICOSP is a covered entity for purposes of HIPAA." (Doc. 1 at ¶ 5). However, this is a legal conclusion to which Plaintiff is not afforded the presumption of truth. *See*, *e.g*., *Iqbal*, 556 U.S. at 664, 678.

Pursuant to HIPAA, a "covered entity" is either a "health plan," a "health care clearinghouse," or a "health care provider who transmits any health information in electronic form in connection with a transaction covered by …" HIPAA. 45 C.F.R § 160.103. Plaintiff admits that ICSOP is a workers' compensation insurer, which does not fall within the definition of a "covered entity" pursuant to HIPAA. *See id*.; *see also* U.S. Department of Health & Human Services, Disclosures for Workers' Compensation Purposes, https://www.hhs.gov/hipaa/for-professionals/privacy/guidance/disclosures-workers-compensation/index.html (last visited January 7, 2019) (explaining that "workers' compensation insurers, workers' compensation

5

4819-9886-1956.5

administrative agencies, or employers …" are not covered entities by virtue of being involved in workers' compensation insurance or claims) [hereinafter "HHS"].[4]  Plaintiff has failed to meet the first requirement of a claim of Negligence *Per Se* because she cannot demonstrate that ICSOP violated a "statute or ordinance"—in this case, HIPAA—because ICSOP is not a "covered entity" subject to the HIPAA prohibitions on disclosure.  (Plaintiff does not allege that ICSOP is a "business associate," but, in any case, such an allegation would fail too).  *See* note 4, *supra*.  Accordingly, Plaintiff's claim of Negligence *Per Se* against ICSOP fails to state a claim upon which relief may be granted, and should be dismissed.

## II. EVEN IF HIPAA WERE THE APPLICABLE STANDARD OF CARE, PLAINTIFF FAILS TO STATE CLAIMS AGAINST ICSOP BECAUSE ANY ALLEGED DISCLOSURES WOULD HAVE BEEN AUTHORIZED.

Plaintiff alleges that she "filed a claim for benefits pursuant to Section 13 of the Longshore and Harbor Workers' Compensation Act … as extended by the Defense Base Act."  (Doc. 1 at ¶ 7).  Assuming that ICSOP was a "covered entity" or "business associate," this context is critical to how HIPAA applies to Plaintiff's claims.  More specifically, workers' compensation claims are an exception to HIPAA.  Thus, even if it were true that Plaintiff only signed one authorization, and did so for a related entity of ICSOP, as Plaintiff alleges, the HIPAA exceptions applicable to

---

[4] ICSOP is aware that Judge Jackson has previously opined in dictum that a workers' compensation carrier was subject to HIPAA (although it is unclear whether she determined that it was a "covered entity" or a "business associate").  *See In re Bextra & Celebrex Mktg., Sales Practices & Prods. Liability Litig.*, No. 4:07-MC-00309 CEJ, 2007 WL 2030243, at *2 (E.D. Mo. July 10, 2007).  However, this is inconsistent with federal regulatory guidance.  *See* HHS, *supra*.  **HHS specifically excludes workers' compensation insurers from both its list of covered entities and business associates.**  U.S. Department of Health & Human Services, Covered Entities and Business Associates, https://www.hhs.gov/hipaa/for-professionals/covered-entities/index.html (last visited January 4, 2019); U.S. Department of Health & Human Services, Business Associates, https://www.hhs.gov/hipaa/for-professionals/privacy/guidance/business-associates/index.html (last visited January 4, 2019); *see also* Standards for Privacy of Individually Identifiable Health Information, 65 Fed. Reg. 82,461, 82,475 (Feb. 26, 2001) (stating that a "business associate" uses or discloses the protected health information "to perform a function or activity ***on behalf of*** the covered entity") (emphasis added).

workers' compensation claims result in Plaintiff failing to state claims for breach of the alleged standard of care.

The Privacy Rule sets forth the minimum national compliance requirements for the use or disclosure of protected health information. Robert A. McLaughlin, *HIPAA, the Privacy Rule and Their Implications Under the Longshore and Harbor Workers' Compensation Act*, 12 Loy. Mar. L.J. 24, 27 (2013). However, "[t]he HIPAA Privacy Rule does not apply to entities that are either workers' compensation insurers, workers' compensation administrative agencies, or employers, except to the extent they may otherwise be covered entities." HHS, *supra*. Instead, "[t]he Privacy Rule recognizes the legitimate need of insurers and other entities involved in the workers' compensation systems to have access to individuals' health information as authorized by State or other law." *Id.* This legitimate need is reflected in 45 C.F.R. § 164.512(l), which provides:

> Standard: Disclosures for workers' compensation. A covered entity may disclose protected health information as authorized by and to the extent necessary to comply with laws relating to workers' compensation or other similar programs, established by law, that provide benefits for work-related injuries or illness without regard to fault.

One such program is the one established by the LWHCA. HHS, *supra*.

Section 164.512(l) was included in direct response to commenters concerned with HIPAA impeding the flow of information in workers' compensation cases, including between workers' compensation carriers and employers. Standards for Privacy of Individually Identifiable Health Information, 65 Fed. Reg. at 82,707. HHS stated:

> *Response:* We agree that the privacy rule should permit disclosures necessary for the administration of state and other workers' compensation systems. To assure that workers' compensation systems are not disrupted, we have added a new provisions [sic] to the final rule. The new § 164.512(l) permits covered entities to disclose protected health information as authorized by and to the extent necessary to comply with workers' compensation or other similar programs established by law that provide benefits for

7

>work-related injuries or illnesses without regard to fault. We also note that where a state or other law requires a use or disclosure of protected health information under a workers' compensation or similar scheme, the disclosure would be permitted under § 164.512(a).

*Id.* at 82,708. Disclosures under § 164.512(a) do not require an authorization. HHS, *supra*. HIPAA's minimum necessary standard, moreover, does not apply to uses or disclosures required by law pursuant to 45 C.F.R. § 164.512(a) or where there is a valid authorization under 45 C.F.R. § 164.508. McLaughlin, *supra*, at 29.[5]

Despite regulatory guidance indicating that workers' compensation actions are treated differently under HIPAA, Plaintiff relies on inapposite cases in its Complaint to try to state claims against ICSOP.

*Inghram v. Mutual of Omaha Insurance Company*, 170 F. Supp. 2d 907 (W.D. Mo. 2001) is not a workers' compensation case. (*See* Doc. 1 at ¶ 183). It is based on claims by an insured against her medical insurance company, which produced the insured's records without her authorization to a defense attorney in a case in which she was a witness. *Inghram*, 170 F. Supp. 2d at 908. This fact pattern very clearly distinguishes *Inghram* from the exception in § 164.512(l) that is relevant to the subject fact pattern. ICSOP was never Plaintiff's medical insurer or otherwise; it was APRO's insurer. Any special relationship giving rise to a fiduciary duty, if one existed, would apply only to ICSOP and ARPO. *See id.* at 911 (creating a special exception recognizing a fiduciary relationship ***between an insurer and an insured***).

*I.S. v. Washington University* is not a workers' compensation case either. (*See* Doc. 1 at ¶

---

[5] There are other potentially applicable HIPAA exceptions too. Disclosure is appropriate to permit an employer to comply with workplace safety reporting obligations. *See* 45 C.F.R. § 164.512(b). Disclosure may also be appropriate as part of judicial and administrative proceedings, such as Plaintiff's workers' compensation proceeding before the Department of Labor. *See id.* § 164.512(e).

8

100). Instead, it involves disclosure by a medical provider—a "covered entity"—of more than the minimum necessary protected health information to satisfy the patient's employer's medical leave policies. *I.S.*, 2011 WL 2433585, at *1. Specifically, Washington University disclosed the patient's HIV status, mental health issues, and insomnia treatments, which were not relevant to his colon cancer treatment. *Id.* The plaintiff in that case had to meet a much different (and lower) threshold to state a claim using HIPAA as the standard of care than Plaintiff must meet here. *See id.* at *3 (setting forth the allegations of Washington University's alleged breach of the standard of care).

By contrast, *State ex rel. Maloney v. Allen*, 26 S.W.3d 244, 248 (Mo. App. W.D. 2000) recognizes that "[i]n certain types of cases, the physician/patient privilege has been modified, relaxed or made inapplicable by legislation. … Such is the case in workers' compensation proceedings where compensation is sought for personal injuries or death of an employee arising out of and in the course of his employment." *See also State ex rel. Dixon Oaks Health Ctr., Inc. v. Long*, 929 S.W.2d 226, 229 n.6 (Mo. App. S.D. 1996). The privilege is waived "to the extent that medical information or testimony relates to the condition for which the employee seeks compensation." *Allen*, 26 S.W.3d at 248. In short, Missouri case law in the applicable context is consistent with federal statutes setting different parameters for worker's compensation disclosures. Here, moreover, where Plaintiff's PTSD condition was at issue, disclosures would necessarily include Plaintiff's mental health information.

Regardless of what the cases cited in Plaintiff's Complaint may generally provide with regard to types of actions and/or their associated standards of care, none of these cases is dispositive in the workers' compensation context in which this alleged disclosure was allegedly made. Plaintiff fails to allege facts supporting a breach; without any such breach, there can be no

9

4819-9886-1956.5

unauthorized and intentional intrusion or any other negligence or intentional wrongful act entitling Plaintiff, as alleged in her remaining claims to relief.  Accordingly, even assuming HIPAA is the proper standard of care, Counts I, II, III, and V fail to state claims upon which relief can be granted and must be dismissed.

**III.     REGARDLESS OF ANY ALLEGED BREACH OF HIPAA, THE ALLEGED INJURIES ARE A CONTINUATION OF A WORK INJURY AND ARE SUBJECT TO THE EXCLUSIVE JURISDICTION OF THE DEPARTMENT OF LABOR.**

"[I]f the exclusivity of the Workers' Compensation Law 'appears from the face of the petition, a defendant can … properly file a motion to dismiss for failure to state a claim … or for judgment on the pleadings … if the affirmative defense appears from the petition and other pleadings." *Pierce v. Zurich Am. Ins. Co.*, 441 S.W.3d 208, 212 (Mo. App. W.D. 2014) (citation omitted).  It is not necessary to proceed through a summary judgment motion in these circumstances. *Id.*

Workers' compensation exclusivity is determined by analyzing whether the subject injury comes within the purview of the workers' compensation law; if so, "recovery can be had, if at all, under the terms" of the applicable workers' compensation statute. *Id.* at 212–13 (citation omitted).

In *Pierce*, the injured worker initially settled his workers' compensation claim after undergoing two knee surgeries. *Id.* at 210.  Subsequent to settlement, the injured worker demanded a total knee replacement. *Id.*  The authorized treating physician, however, twice opined that a total knee replacement stemmed from pre-existing arthritis rather than the work-related injury. *Id.* at 210–11.  The injured worker then filed suit against the workers' compensation insurer, alleging that the insurer had violated workers' compensation statutes by making allegedly fraudulent and material misrepresentations for the purpose of denying medical benefits provided under the workers' compensation settlement agreement. *Id.* at 211.  The insurer moved to dismiss or, in the alternative, for judgment on the pleadings. *Id.*

10

The court held that, on the face of the pleadings, the injured worker's request for relief fell within the parameters of the workers' compensation statute. *Id.* at 213–14. His demand for a total knee replacement was a reactivation of his settled workers' compensation claim. *Id.* at 214. Accordingly, the court stated that "the Missouri Workers' Compensation Law contemplates the relief sought by [the injured worker] and constitutes the exclusive remedy sought by [the injured worker]." *Id.* As such, the trial court lacked statutory authority to proceed with any request that the court order the insurer to pay for a total knee replacement. *Id.*

Just as the Missouri Workers' Compensation Law includes an exclusivity provision, *id.* at 213, so too does the Defense Base Act, under which Plaintiff's prior claim was brought, 42 U.S.C. § 1651(c). *See also Ladd v. Chemonics Int'l, Inc.*, 603 F. Supp. 2d 99, 120–21 (D.D.C. 2009) (stating that claims under the Defense Base Act and the incorporated Longshore and Harbor Workers' Compensation Act must be administratively brought before the Department of Labor, and granting summary judgment on plaintiff's claims seeking additional compensation and benefits under the Defense Base Act); Doc. 1 at ¶¶ 7, 60–62.

Importantly, Plaintiff alleges that her PTSD condition stems from her overseas work in Afghanistan. (*Id.* at ¶ 25 ("… [I]n or around June 2014, Plaintiff began suffering from PTSD as a result of her work with APRO in Afghanistan.")). Plaintiff also alleges that she is suffering a "reoccurrence of PTSD." (*Id.* at ¶¶ 12, 125, 177, 188). This alleged reoccurrence is alleged to have been directly connected to Plaintiff's workplace injury and the resulting workers' compensation claim and investigation thereof. (*Id.* at ¶¶ 31–32, 56, 64, 86, 89). It is thus clear from the face of the pleadings that the PTSD condition is a workplace injury and that Plaintiff is seeking additional compensation for this workplace injury. Claims for additional compensation for an injury that arose in the course and scope of employment cannot be resolved before this

11

Court.  *See* 42 U.S.C. § 1651(c); *Ladd*, 603 F. Supp. 2d at 121; *Pierce*, 441 S.W.3d at 214; *Hughes v. Maryland Cas. Co.*, 229 Mo. App. 472, 76 S.W.2d 1101, 1104–05 (1934) (holding that injured worker could not recover against insurance carrier in tort for alleged physician malpractice that worsened his workplace injury; any claim had to be brought before the compensation commission because the "aggravation follows as the natural result of the injury and the damages to be paid therefor are included in the compensation awarded by the commission"); *see also Schumacher v. Leslie*, 360 Mo. 1238, 1248, 232 S.W.2d 913, 919 (Mo. banc 1950) (stating that an employer's insurer "is not a stranger or 'third person' under the [Workers' Compensation] Act' against whom there may be recovery in tort); *cf. State ex rel. Am. Motorists Ins. Co. v. Ryan*, 755 S.W.2d 399 (Mo. App. E.D. 1988) (holding that Missouri does not recognize a first-party bad faith claim in the workers' compensation context or otherwise, based on the workers' compensation insurer's handling of the injured worker's claim).

This exclusive remedy before an administrative agency has been found to be true even where injured workers have attempted to bring claims against workers' compensation insurers for allegedly wrongfully disclosing medical records.  In *Wistrom v. Employers Insurance of Wausau*, 249 Wis.3d 489, 629 N.W.2d 224, 2002 WI App 1, 1 (Ct. App. 2001), the court affirmed summary judgment for the insurer on an injured worker's claim for wrongful disclosure of medical records, invasion of privacy, and intentional infliction of emotional distress.  The injured worker argued that these claims fell outside the workers' compensation exclusive remedy doctrine. *Id.* at 2.  The insurer countered that the claims were really for bad faith handling of the workers' compensation claim, for which the sole remedy was set forth in the workers' compensation statute. *Id*.  The workers' compensation statute, however, provided an exception that "resulted in a broad waiver of physician-patient privilege that encompasse[d] any records relating to a worker's compensation

12

claim." *Id.* at 3.  This statutory waiver nullified the worker's claims. *Id.*

An analogous waiver is part of the Longshore and Harbor Workers' Compensation Act. 33 U.S.C. § 907(d)(2).  An employer is entitled to a copy of a physician report per the following:

> No claim for medical or surgical treatment shall be valid and enforceable against such employer unless, within ten days following the first treatment, ***the physician giving such treatment furnishes to the employer*** and the deputy commissioner ***a report of such injury or treatment***, on a form prescribed by the Secretary.  The Secretary may excuse the failure to furnish such report within the ten-day period whenever he finds it to be in the interest of justice to do so.

*Id.*; *see also* Mo. Rev. Stat. § 287.140.7 ("Every hospital or other person furnishing the employee with medical aid shall permit its record to be copied and shall furnish full information to the … employer … and any other party to any proceedings for compensation under this chapter …"). Furthermore, if an injured worker unreasonably refuses to submit to an examination by a physician that the employer selects, the injured worker may not receive any further compensation until the worker submits to the examination.  33 U.S.C. § 907(d)(4).  In addition to these two avenues for obtaining physician reports, an employer presumably would receive any periodic reports of medical care filed in connection with the administrative adjudication of the injured worker's claim. *See id.* § 907(b) ("The Secretary shall actively supervise the medical care rendered to injured employees, shall require periodic reports as to the medical care being rendered to injured employees, … and may, on his own initiative or at the request of the employer, order a change of physicians or hospitals when in his judgment such change is desirable or necessary in the interest of the employee …").

If Plaintiff takes issue with any alleged disclosure of physician reports by ICSOP to APRO—***reports to which APRO was entitled by statute***—then Plaintiff's exclusive remedy for any such alleged disclosure should be before the Department of Labor.  The Department of Labor,

13

not this Court, should decide any matters relating to the parties' handling of the administrative claim and any alleged additional compensation for a reoccurrence of the workplace injury owed because of any alleged mishandling. For all these reasons, this Court should dismiss the claims against ICSOP or enter judgment for ICSOP based on the insufficient allegations of the Complaint.

## **CONCLUSION**

Plaintiff's case rests on ICSOP allegedly having made a disclosure that it was not authorized by law to make. Plaintiff, however, has relied on principles of law that either are incorrect (*e.g.*, workers' compensation carriers being covered entities) or inapplicable in the workers' compensation context. Plaintiff's claims all fail without the alleged unauthorized or illegal disclosure.

Ultimately, the rules are different in the workers' compensation context, and an employer is entitled to much more information than in other contexts. Accordingly, even assuming there was a disclosure and that there was no written authorization for such disclosure, disclosures authorized by workers' compensation laws do not require written authorizations.

Even notwithstanding the above, Plaintiff has already been compensated for her workplace injury. Although the allegations of her Complaint do not support any legal liability for the reactivation of her injury for all the reasons set forth herein, Plaintiff must attempt to seek additional recompense before the Department of Labor if she wishes to proceed further. This court is not the appropriate place. Thus, ICSOP respectfully requests that this Court dismiss Counts I, II, III, and V.

4819-9886-1956.5

Date: January 18, 2019

Respectfully submitted,

*/s/ Jean-Paul Assouad*
Jean-Paul Assouad         #50747  MO
Meredith A. Webster       #63310  MO
KUTAK ROCK LLP
2300 Main Street, Suite 800
Kansas City, MO 64108
(816) 960-0090 (Telephone)
(816) 960-0041 (Facsimile)
Jean-Paul.Assouad@KutakRock.com
Meredith.Webster@KutakRock.com
**ATTORNEYS FOR DEFENDANT INSURANCE COMPANY OF THE STATE OF PENNSYLVANIA**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing was served on this 18th day of January, 2019, using the Court's ECF system, which provided notice to all parties of record.

*/s/ Jean-Paul Assouad*
ATTORNEY FOR DEFENDANTS

4819-9886-1956.5