UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| MARIAH DIANE BOWLES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 4:18CV1869 HEA |
| | ) | |
| APRO INTERNATIONAL INC. | ) | |
| INSURANCE COMPANY OF THE | ) | |
| STATE OF PENNSYLVANIA, et al., | ) | |
| | ) | |
| Defendants, | ) | |

# **OPINION, MEMORANDUM AND ORDER**

This matter is before the Court on Defendants Insurance Company of the State of Pennsylvania and Apro International, Inc.'s Motions to Dismiss [Doc. Nos. 18 and 34, respectively]. Plaintiff opposes the Motions, which have been fully briefed. For the reasons set forth below, the Motions to Dismiss are granted.

## **Facts and Background**[1]

In her Complaint, Plaintiff alleges the following:

Plaintiff was employed by Defendant APRO International Inc. overseas in Afghanistan from September 2, 2012 to March 28, 2013 as a Medical Supply Specialist/Warehouse Specialist. 20. Plaintiff worked in a medical warehouse

---

[1] The recitation of facts is taken from Plaintiff's Complaint and is set forth for the purposes of the pending motions to dismiss. The recitation does not relieve any party of the necessary proof of any stated fact in future proceedings.

1

situated in the flight line for medical evacuation helicopters delivering wounded soldiers to a hospital located next door to the warehouse. During Plaintiff's 12-hour shifts, helicopters would fly past the warehouse or land in front of it depending on how many helicopters were landing with wounded soldiers.

Because Plaintiff worked in a medical supply warehouse located next door to a hospital treating wounded soldiers, she frequently witnessed casualties. While working for APRO in Afghanistan, Plaintiff suffered from tinnitus as a result of her proximity to enemy combatants. Plaintiff's jobsite was subjected to frequent bombings.

In or around June 2014, Plaintiff began suffering from PTSD as a result of her work with APRO in Afghanistan. Plaintiff was officially diagnosed with PTSD by a psychiatrist on or about August 22, 2014. Thereafter, she was restricted from returning to work in a combat zone.

Insurance Company of the State of Pennsylvania, ("ICOSP") was APRO's workers' compensation benefits insurer during the time Plaintiff was employed by APRO. Plaintiff filed a claim for workers' compensation benefits pursuant to the Longshore and Harbor Workers' Compensation Act, 33 U.S.C. § 901, *et seq*. ("Plaintiff's Claim").

As part of AIG's[2] and/or ICOSP's investigation of Plaintiff's Claim, Plaintiff was required to meet with various doctors. The purpose of having Plaintiff meet with these doctors was to allow the doctors to conduct medical and psychiatric evaluations to determine whether Plaintiff experienced PTSD as a result of her work for APRO in Afghanistan.

Plaintiff recalls signing a Health Insurance Portability and Accountability Act consent form ("HIPAA Consent Form") that was submitted to her by a representative of Defendant AIG. The HIPAA Consent Form authorized AIG to obtain Plaintiff's highly confidential medical and mental health treatment and evaluation records for the sole purpose of allowing AIG to evaluate her workers' compensation claim.

The HIPAA Consent Form did not authorize AIG to provide Plaintiff's confidential medical and mental health treatment and evaluation records to any third-parties. The HIPAA Consent Form did not authorize AIG to provide Plaintiff's confidential medical and mental health treatment and evaluation records to Defendant APRO. The HIPAA Consent Form did not authorize AIG to provide Plaintiff's confidential medical and mental health treatment and evaluation records to any of the JOHN or JANE DOE Defendant APRO Executives. The HIPAA

---

[2] AGI is the holding company to ICSOP and has been previously dismissed from this action.

Consent Form did not authorize AIG to provide Plaintiff's confidential medical and mental health treatment and evaluation records to any of the JOHN or JANE DOE Defendant APRO Employees. The HIPAA Consent Form did not authorize Defendant APRO to obtain or receive Plaintiff's confidential medical and mental health treatment and evaluation records. The HIPAA Consent Form did not authorize the JOHN or JANE DOE Defendant APRO Executives to obtain or receive Plaintiff's confidential medical and mental health treatment and evaluation records. The HIPAA Consent Form did not authorize the JOHN or JANE DOE Defendant APRO Employees to obtain or receive Plaintiff's confidential medical and mental health treatment and evaluation records.

Plaintiff does not believe that she received a separate HIPAA consent form from ICOSP. She does not believe the HIPAA Consent Form names ICOSP. The HIPAA Consent Form did not expressly authorize ICOSP to obtain or receive Plaintiff's confidential medical and mental health treatment and evaluation records for the purpose of evaluating her workers' compensation claim.

Even if the HIPAA Consent Form (or any other HIPAA consent form) authorized ICOSP to review Plaintiff's confidential medical and mental health treatment and evaluation records for the purpose of evaluating her workers' compensation claim, the HIPAA Consent Form did not authorize ICOSP to

provide Plaintiff's confidential medical and mental health treatment and evaluation records to any third-parties.

The HIPAA Consent Form did not authorize ICOSP to provide Plaintiff's confidential medical and mental health treatment and evaluation records to Defendant APRO, any of the JOHN or JANE DOE Defendant APRO Executives, Defendant APRO Employees.

The HIPAA Consent Form did not authorize Defendant APRO, the JOHN or JANE DOE Defendant APRO Executives, or the JOHN or JANE DOE Defendant APRO Employees to obtain or receive Plaintiff's confidential medical and mental health treatment and evaluation records.

Even if Plaintiff's workers' compensation claim would have allowed AIG and/or ICOSP to obtain her confidential medical and mental health treatment records for the purpose of evaluating her workers' compensation claim, her submission of a workers' compensation claim would not have authorized or allowed Defendant APRO, the Defendant JANE DOE or JOHN DOE Executives employed by APRO, or the Defendant JANE DOE or JOHN DOE Employees to obtain or receive knowledge of Plaintiff's confidential medical and mental health treatment records.

Even if Plaintiff's workers' compensation claim would have allowed AIG

and/or ICOSP to obtain her confidential medical and mental health treatment records for the purpose of evaluating her workers' compensation claim, her submission of a workers' compensation claim would not have authorized or allowed the Defendant JANE DOE or JOHN DOE Executives or JANE DOE or JOHN DOE employees to have knowledge of Plaintiff's confidential medical and mental health treatment records.

The disclosure of Plaintiff's personal medical and mental health information involved the disclosure of highly confidential medical and mental health information. As part of AIG and/or ICOSP's investigation of Plaintiff's workers' compensation claim, Plaintiff was required to identify and discuss highly personal medical and mental health related information that she would not have disclosed to any other individuals. Plaintiff expected that her disclosures of highly personal medical and mental health related information pursuant to AIG's investigation of her workers' compensation claim would be maintained on a confidential basis with her medical and mental health providers and the medical and mental health providers that she met. Plaintiff expected that her disclosures of highly personal medical and mental health related information to AIG pursuant to AIG's investigation of her workers' compensation claim would be maintained by AIG on a confidential basis.

To the extent ICOSP investigated Plaintiff's workers' compensation claim,

Plaintiff expected that her disclosures of highly personal medical and mental health related information would be maintained by ICOSP on a confidential basis.

Plaintiff settled her workers' compensation claim which resulted in the execution of a Settlement Agreement. The Settlement Agreement stated that "[a]pproval and payment of this agreed settlement under Section 8(i) of the Act shall discharge [APRO] and ICOSP's liability for the payment of compensation and medical benefits, as well as attorney's fees and costs." The Settlement Agreement stated that "[a]pproval and payment of the settlement will discharge Employer/Carrier of liability for payment of all past and future compensation ... as well as all future medical expenses a result of the claim injury." The Settlement Agreement did not include language setting forth a general release of any and all claims, known or unknown.

Because AIG received Plaintiff's confidential and highly personal medical and mental health records as part of its investigation of Plaintiff's workers' compensation claims, it is plausible that someone employed by AIG allowed one or more of the JANE DOE or JOHN DOE Executives employed by APRO to improperly obtain access to Plaintiff's confidential medical and mental health records without Plaintiff's consent.

Someone employed by AIG allowed one or more of the JANE DOE or JOHN DOE Employees employed by APRO, one or more individuals employed by

7

ICOSP, and/or one or more of the JANE DOE or JOHN DOE Executives employed by APRO to improperly obtain access to Plaintiff's confidential medical and mental health records without Plaintiff's consent.

One or more individuals employed by AIG allowed one or more of the JANE DOE or JOHN DOE Employees employed by APRO, one or more of the JANE DOE or JOHN DOE Executives employed by APRO, one or more of the JANE DOE or JOHN DOE Employees employed by APRO to improperly receive Plaintiff's confidential medical and mental health records without Plaintiff's consent.

One or more individuals employed by ICOSP allowed one or more of the JANE DOE or JOHN DOE Executive and JANE DOE or JOHN DOE Employees employed by APRO to improperly obtain access to Plaintiff's confidential medical and mental health records without Plaintiff's consent.

One or more of the JANE DOE or JOHN DOE employees and Executives employed by APRO improperly obtained access to Plaintiff's confidential medical and mental health records without Plaintiff's consent, which constitutes an unreasonable means of obtaining access to these matters.

One or more of the JANE DOE or JOHN DOE Executives and JANE DOE or JOHN DOE employees employed by APRO improperly disclosed Plaintiff's confidential medical and mental health records to other APRO executives and

8

employees without Plaintiff's consent, which constitutes an unreasonable means of obtaining access to these matters.

One or more of the JANE DOE or JOHN DOE Executives and JANE DOE or JOHN DOE employees employed by APRO improperly disclosed Plaintiff's confidential medical and mental health records to other APRO executives without Plaintiff's consent, which constitutes an unreasonable means of obtaining access to these matters.

AIG, without any authorization from Plaintiff, forwarded and/or disclosed her highly confidential medical information and mental health conditions to one or more of the JANE DOE and/or JOHN DOE Executive and JANE DOE or JOHN DOE employee Defendants employed by APRO.

ICOSP, without any authorization from Plaintiff, forwarded and/or disclosed her highly confidential medical information and mental health conditions to one or more of the JANE DOE and/or JOHN DOE Executive Defendants and JANE DOE or JOHN DOE employees employed by APRO.

One or more of the JANE DOE and/or JOHN DOE Executive Defendants and the JANE DOE and/or JOHN DOE employees employed by APRO, without any authorization from Plaintiff, forwarded and/or disclosed her highly confidential medical information and mental health conditions to other JANE DOE

and/or JOHN DOE Executive Defendants and JANE DOE and/or JOHN DOE employees employed by APRO.

Plaintiff has only recently become aware of Defendants' unlawful disclosures of her highly personal medical and mental health conditions related to her employment in Afghanistan. In particular, Plaintiff has recently learned that certain JANE DOE and/or JOHN DOE Executive or Employees of APRO obtained her private and confidential medical and mental health records without her consent and that these JANE DOE and/or JOHN DOE Defendants knew specific details contained in her private and confidential medical and mental health records. This disclosure of Plaintiff's highly confidential and personal medical and mental health information has caused Plaintiff to become physically ill. This disclosure of Plaintiff's highly confidential and personal medical and mental health information has caused Plaintiff to suffer from anxiety, mental distress and reoccurrences of PTSD. The disclosure of Plaintiff's highly confidential and personal medical and mental health information has caused Plaintiff to suffer reputational harm and has harmed her job prospects.

Plaintiff was astounded and horrified when she learned that ICOSP, and in turn, APRO, had provided and/or allowed her highly personal and confidential medical and mental health records to be disseminated to executives and employees of APRO without her consent.

Plaintiff suffered emotional distress, anguish and anxiety after learning that Defendants released her highly personal and confidential medical and mental health records that had been improperly disseminated to and shared with executives and employees of APRO including, but not limited to, the JANE DOE and/or JOHN DOE Defendants.

The claims for Negligence *Per Se* (Count I), Intrusion Upon Seclusion (Count II), Intentional Infliction of Emotional Distress (Count III), and Breach of Fiduciary Duty vs. ICOSP (Count V) are the subject of Defendants Motions to Dismiss.[3]

**Standard of Review**

The purpose of a motion to dismiss for failure to state a claim is to test the legal sufficiency of the complaint. To survive a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A complaint states a plausible claim for relief if its 'factual content ... allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678).

---

[3] Count IV, Breach of Fiduciary Duty vs. AIG has been dismissed.

When considering a 12(b)(6) motion, the district court accepts as true all factual allegations in the complaint and grants all reasonable inferences in favor of the nonmoving party. *Crooks v. Lynch*, 557 F.3d 846, 848 (8th Cir. 2009). A claim for relief "must include sufficient factual information to provide the 'grounds' on which the claim rests, and to raise a right to relief above a speculative level." *Schaaf v. Residential Funding Corp.,* 517 F.3d 544, 549 (8th Cir. 2008) (quoting *Twombly*, 550 U.S. at 555 & n.3). This obligation requires a plaintiff to plead "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. The principle that a court must accept as true all of the allegations contained in a complaint does not apply to legal conclusions. *Iqbal,* 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice").

## Discussion

**Negligence *Per Se***

"Negligence per se arises where the legislature pronounces in a statute what the conduct of a reasonable person must be, whether or not the common law would require similar conduct." *Lowdermilk v. Vescovo Bldg. and Realty Co., Inc.*, 91 S.W.3d 617, 628 (Mo. Ct. App. 2002) (internal citations and quotation marks omitted). When the legislature has done so, "the court then adopts the statutory

12

standard of care to define the standard of conduct of the reasonable person." *Id.* (citing Restatement Torts (Second) §§ 286, 288 (1965)). "Negligence per se 'is a form of ordinary negligence that results from the violation of a statute.'" *Id.*, (quoting 57A Am. Jur. 2d Negligence § 727 (1989)). Where negligence per se is applicable, "the jury is instructed on the statutory standard of care rather than the care of the reasonable person." *Id.* (citing *Egenreither v. Carter*, 23 S.W.3d 641, 643–45 (Mo. Ct. App. 2000)).

The four requirements necessary to establish a claim for negligence per se are:

> 1) a violation of a statute or ordinance; 2) the injured party must be within the class of persons intended to be protected by the statute or ordinance; 3) the injury complained of must be of the nature that the statute or ordinance was designed to prevent; and 4) the violation of the statute or ordinance must be the proximate cause of the injury.

*Lowdermilk*, 91 S.W.3d at 628 (quoting *Bus. Men's Assur. Co. v. Graham*, 891 S.W.2d 438, 455 (Mo. Ct. App. 1994)).

Plaintiff recognizes that HIPPA does not provide a private cause of action. She uses HIPPA however as the statute upon which she bases her negligence *per se* claim, claiming that Defendants violated HIPPA through disclosure of sensitive medical and mental health records. As Defendants correctly argue, Plaintiff's reliance on any alleged violation of HIPPA is misplaced. Pursuant to the Code of Federal Regulations, HIPPA prohibition from disclosure applies only to a "covered

13

entity" or its "business associate." 45 C.F.R. § 164.502(a). A covered entity is defined as a "health plan," a "health care clearinghouse," or a "health care provider who transmits any health information in electronic form in connection with a transaction covered by" HIPPA.

While the Complaint boldly states that Defendants are "covered entities," this legal conclusion falls flat under examination. Plaintiff fails to set forth sufficient facts which support the conclusion; indeed, under the applicable regulations, Plaintiff has no basis upon which to connect these defendants with HIPPA requirements. They simply are not "covered entities" subject to the disclosure prohibition of HIPPA. Plaintiff's unsupported attempt to claim Defendants are somehow estopped from claiming the non-applicability of HIPPA to them is unavailing. The provisions of HIPPA and the regulations make clear that in order for a violation to have occurred, there must be a "covered entity. In that Defendants are not subject to HIPPA's nondisclosure element, there can be no violation of HIPPA by these defendants. As such, Plaintiff's negligence *per se* claim fails to state a cause of action and must be dismissed.

**Intrusion Upon Seclusion**

To state a claim for invasion of privacy for the unreasonable intrusion upon the seclusion of another, the plaintiff must show "(1) the existence of a secret and private subject matter; (2) a right in the plaintiff to keep that subject matter private;

14

and (3) the obtaining by the defendant of information about that subject matter through unreasonable means." *St. Anthony's Medical Center v. H.S.H.,* 974 S.W.2d 606, 609–10 (Mo.Ct.App.1998).

Plaintiff alleges that she authorized AIG to obtain confidential medical and mental health treatment and evaluation records, that as part of her workers' compensation claim, she was required to identify and discuss highly personal medical and mental health related information, and that one or more defendants disclosed the confidential medical and mental health treatment and evaluation records to third parties. She further alleges that someone employed by AIG allowed the Jane or John Doe Employees to improperly obtain access to her records without her consent. Plaintiff, in a conclusory manner, declares this to be an unreasonable means of obtaining access to her records.

Under the applicable standard for motions to dismiss, the Court is not required to accept as true Plaintiff's conclusory claims that Defendant obtained her information through unreasonable means. Indeed, the other allegations establish that Defendants acquired the information through the prosecution by Plaintiff of her workers' compensation claim. The Complaint does not claim that either Defendant obtained the information through their own actions at all. Count II fails to state a claim under the *Twombly/Iqbal* standard.

**Intentional Infliction of Emotional Distress**

"[T]o state a claim for intentional infliction of emotional distress," a plaintiff "must plead that 1) the defendants' conduct was extreme and outrageous, 2) the conduct was intentional or done recklessly, and 3) the conduct caused severe emotional distress that results in bodily harm." *Thornburg v. Federal Express Corp.*, 62 S.W.3d 421, 427 (Mo. Ct. App. 2001) (citing *Gibson v. Brewer*, 952 S.W.2d 239, 249 (Mo. banc 1997)). "Additionally, the plaintiff must establish that the sole intent in acting was to cause emotional distress." *Ward v. Smith*, 844 F.3d 717, 723 (8th Cir. 2016) (internal quotation marks omitted) (quoting *Cent. Mo. Elec. Coop v. Balke*, 119 S.W.3d 627, 636 (Mo. Ct. App. 2003)).

Similar to the shortcomings in Count II, Count III fails to state a claim because the allegations once again merely state the conclusion that Defendants' alleged actions were extreme and outrageous. Moreover, Plaintiff fails to allege any facts which could be construed as fulfilling the intent requirement. Plaintiff claims collapse with the allegations that the information was obtained as part of the workers' compensation proceeding, thereby belying the element of intentional or recklessness in obtaining the information.

Even assuming that either Defendant "allowed" dissemination of Plaintiff's records, Plaintiff's claims also lack any support of how or in what way Defendants' actions were extreme and outrageous, other than merely stating that

16

they allowed the information to be disclosed at an indefinite time to unknown employees of Apro. Count III will be dismissed.

**Breach of Fiduciary Duty vs. ICOSP**

Plaintiff claims that ICOSP owed a duty to Plaintiff as her provider of workers' compensation benefits to keep her medical and mental health information confidential, citing *Inghram v. Mutual of Omaha Insurance Company*, 170 F.Supp.2d 907 (W.D. MO 2001). As Defendant correctly argues, *Inghram*, however is inapplicable in that it is based on claims between an insured and her insurance company. Plaintiff fails to set forth sufficient facts to establish that ICOSP owed any type of fiduciary duty to Plaintiff as the insurance carrier for Arpo. Count V will be dismissed.

## Conclusion

The Motions to Dismiss are well taken. The Complaint fails to set forth sufficient allegations to state plausible claims for relief.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants Insurance Company of the State of Pennsylvania and Apro International, Inc.'s Motions to Dismiss [Doc.

Nos. 18 and 34, respectively], are **GRANTED**.

Dated this 15th day of July, 2019.

_____
HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE